**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

DORLETHA LAMBERT PLAINTIFF

v. 3:24CV00126-DPM-JTK

DEXTER PAYNE, et al. DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. Any party may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Dorletha Lambert ("Plaintiff") was an inmate at the McPherson Unit of the Arkansas Division of Correction ("ADC") at the time she filed this lawsuit. (Doc. No. 2 at 1). In May, 2026, she was released from custody. (Doc. No. 95 at 2; Doc. No. 103).

Plaintiff's Complaint is the operative pleading in this action. (Doc. No. 2). Plaintiff sued ADC Director Dexter Payne and McPherson Unit Warden Nurzuhal Faust along with APN Jamie Campbell and Medical Unit Director/Nurse Anna Hackney under 42 U.S.C. § 1983. (Id. at 1-2). She sued all Defendants in their personal and official capacities. (Id. at 2).

Plaintiff's official capacity claims have been dismissed, along with her personal capacity claims against Defendant Payne. (Doc. Nos. 27, 31, 69, 71). Defendant Payne was terminated as a party to this action on December 3, 2025. (Doc. No. 71).

Plaintiff's personal capacity claims against Defendants Faust, Campbell, and Hackney remain pending. Plaintiff's claims arise from her experience with bed bugs at the McPherson Unit. Plaintiff alleges Defendant Faust subjected her to unlawful conditions of confinement. Plaintiff further alleges Defendants Campbell and Hackney (collectively, the "Medical Defendants") were deliberately indifferent to her serious medical needs. (Doc. No. 2).

The Medical Defendants filed a Motion for Summary Judgment on the merits of Plaintiff's claims. (Doc. Nos. 80-82). In Proposed Findings and Recommendations, the Court recommended the Medical Defendants' Motion be granted. (Doc. No. 113). The Recommendation remains pending.

On June 15, 2026, Defendant Faust filed a Motion for Summary Judgment on the merits of Plaintiff's claims, Brief in Support, and Statement of Facts. (Doc. Nos. 108-110). On June 22, 2026, the Court directed Plaintiff to file her response within 30 days. (Doc. No. 112). The Court warned Plaintiff that her failure to respond could result in Defendant Faust's Statement of Undisputed Material Facts being deemed admitted. (Id.). Despite this warning, Plaintiff has not responded and the time for doing so has passed.

After careful consideration of the record and for the reasons explained below, I recommend Defendant Faust's Motion be granted.

## II. Plaintiff's Pending Claims

Plaintiff complains that she suffered from bed bug bites at the McPherson Unit since July 7, 2023. (Doc. No. 2 at 3). She claims that Defendant Faust was aware of the bugs and the bites

but did nothing to improve the conditions of Plaintiff's confinement. (Id.). Plaintiff also asserts that the Medical Defendants were deliberately indifferent to her serious medical needs related to the bed bug bites. (Id. at 4). According to Plaintiff, Defendant Campbell misdiagnosed Plaintiff, entered false information into the system to make it appear that Plaintiff had acne rather than bed bug bites, and provided Plaintiff inappropriate treatment. (Id.). Defendant Hackney also allegedly added false information into the system and tampered with Plaintiff's evidence—a small plastic bag containing several dead bed bugs. (Id.). Plaintiff further alleged that Defendant Faust allowed the medical staff to "continue to let this situation carry on for so long without doing something to get the matter resolved." (Id. at 4-5).

## III. Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual

dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. Fed. R. Civ. P. 56(e).

## IV. Discussion

### A. Undisputed Facts

Defendant Faust is the Warden of the McPherson Unit of the ADC. (Doc. No. 109 at ¶ 2; Doc. No. 108-2 at ¶¶ 1-2). She is not a licensed medical provider, does not diagnose or treat medical conditions, and relies on the professional judgment of contracted medical staff with respect to inmate medical matters. (Doc. No. 109 at ¶ 4; Doc. No. 108-2 at ¶ 2).

Plaintiff first raised complaints about bed bugs in or around July through September of 2023. (Doc. No. 109 at ¶ 5; Doc. No. 108-1 at 5:18-7:15, 30:7-31:9).

Plaintiff testified that she first notified Defendant Faust of her bed bug complaints through the grievance process, and that Defendant Faust responded to her grievance. (Doc. No. 109 at ¶ 6; Doc. No. 108-1 at 7:13-7:24).

Plaintiff testified that, in her first grievance response, Defendant Faust responded that Captain Watson had issued Plaintiff a different mat and that medical needed to verify whether Plaintiff's condition was a bed bug issue before further action could be taken. (Doc. No. 109 at ¶ 7; Doc. No. 108-1 at 7:10-8:8; 28:1-28:7).

After Lieutenant Dunnigan did not respond to Plaintiff's grievance, Plaintiff reported her bed bug complaint to Captain Kaleena Watson. In response, Captain Watson arranged for Plaintiff to be issued a different mat, having Lieutenant Dunnigan provide it, in or around August 2023. (Doc. No. 109 at ¶ 8; Doc. No. 108-1 at 9:1-9:8; 10:16-11:8; 12:15-12:21; Doc. No. 108-5 at ¶¶ 3-4).

On or about October 23, 2023, Defendant Faust met with Plaintiff regarding her bed bug complaints. Deputy Warden John Moss and Major Johnnie Swift were present. (Doc. No. 109 at ¶ 9; Doc. No. 108-1 at 28:8-28:21; 29:8-29:15; Doc. No. 108-2 at ¶ 7; Doc. No. 108-4 at ¶¶ 3).

During the October 2023 meeting, Defendant Faust discussed Plaintiff's complaints with her, inquired about the history and circumstances of her complaints, had Plaintiff's file photographs reviewed, and addressed Plaintiff's request to be transferred to another unit. (Doc. No. 109 at ¶ 10; Doc. No. 108-1 at 27:23-28:21; 29:16-30:6; Doc. No. 108-2 at ¶ 7; Doc. No. 108-4 at ¶¶ 3-4).

On or about October 24, 2023, Defendant Faust documented her involvement in an internal email to ADC mental health administrator Alan Rogers, copying Deputy Warden Moss and Major Swift. The email reflects that medical had seen Plaintiff and had inspected her mattress and property in the barracks and found no bed bugs; that Defendant Faust had spoken with Plaintiff personally; that Defendant Faust was arranging for mental health staff to see Plaintiff; and that Defendant Faust had reviewed Plaintiff's status in the ADC's eOMIS system. (Doc. No. 109 at ¶ 11; Doc. No. 108-2 at ¶ 8; Doc. No. 108-3).

Medical staff and unit staff inspected Plaintiff's mattress, bedding, and personal property on more than one occasion. These inspections did not reveal any bed bugs or evidence of a bed

bug infestation in Plaintiff's bed area, property, or barracks. (Doc. No. 109 at ¶ 12; Doc. No. 108-2 at ¶ 6; Doc. No. 108-3).

No other inmate housed in Plaintiff's bed area or barracks complained of or was found to have bed bugs. (Doc. No. 109 at ¶ 13; Doc. No. 108 at 15:11-15:24; Doc. No. 108-2 at ¶ 6; Doc. No. 108-3 at 2; Doc. No. 108-6; Doc. No. 108-7).

Plaintiff was later provided additional replacement bedding, linens, and a mat in or around February 2024. (Doc. No. 109 at ¶ 14; Doc. No. 108-1 at 12:22-13:3; 8:11-9:8).

Defendant Faust referred Plaintiff for additional services, including arranging for Plaintiff to be seen for vision-related services. (Doc. No. 109 at ¶ 15; Doc. No. 108-2 at ¶ 10; Doc. No. 108-1 at 32:5-32:13).

Plaintiff was examined by medical staff on numerous occasions between August 2023 and 2024 in connection with her skin condition and complaints of bed bug bites. (Doc. No. 109 at ¶ 16; Doc. No. 82).

Medical staff who examined Plaintiff determined her skin condition was not caused by bed bugs. Plaintiff's clinical presentation was assessed as consistent with acne and a dermatological condition, and she was prescribed medications and washes for that condition. (Doc. No. 109 at ¶ 17; Doc. No. 108-2 at ¶ 9; Doc. No. 82).

When Plaintiff presented items she claimed were bed bugs, medical staff inspected them and concluded they appeared to be food crumbs or fuzz. (Doc. No. 109 at ¶ 18; Doc. No. 108-3 at 2; Doc. No. 108-1 at 13:4-13:17).

Medical staff ordered hydrocortisone and loratadine, medications commonly used to treat bed bug bite symptoms, as well as a new mat and bed linens, to address Plaintiff's concerns. (Doc. No. 109 at ¶ 19; Doc. No. 82).

On October 20, 2023, Plaintiff presented to medical complaining of bed bugs and brought a tissue containing pieces of material that the provider assessed appeared to be food crumbs. The provider attempted to show Plaintiff a photograph of bed bugs, but Plaintiff insisted she knew what bed bugs looked like. On examination, the provider noted diffuse papules to Plaintiff's upper back and anterior neck that "do not appear to be bug bites," and assessed Plaintiff with seborrheic dermatitis. (Doc. No. 109 at ¶ 20; Doc. No. 82-7).

On January 3, 2024, medical assessed Plaintiff with slight pustular acne and facial scarring. Plaintiff reported that her rash had "greatly improved," denied any recent bug bites, and stated that they were "healing now." (Doc. No. 109 at ¶ 21; Doc. No. 82-9).

On examination dates including February 20, 2024, and March 14, 2024, medical staff noted spots of discoloration to Plaintiff's face but observed no rash, psoriasis, eczema, or contact dermatitis. (Doc. No. 109 at ¶ 22; Doc. No. 82-12; Doc. No. 82-14 at 1-2).

Throughout her course of treatment, medical staff documented no evidence of bed bugs and treated Plaintiff's condition as a dermatological condition. (Doc. No. 109 at ¶ 23; Doc. Nos. 82-1 to 82-12, 82-14 to 82-17).

On several occasions, Plaintiff refused sick-call visits and medical treatment offered to her. (Doc. No. 109 at ¶ 24; Doc. No. 82-4; Doc. No. 82-8; Doc. No. 82-10; Doc. No. 82-16; Doc. No. 82-17).

Plaintiff testified that she has no knowledge of any motive medical staff would have had to falsify her medical records. (Doc. No. 109 at ¶ 25; Doc. No. 108-1 at 16:3-16:7, 18:21-19:7).

Upon Plaintiff's request, she was transferred to the Hawkins Unit on or around July 19, 2024. (Doc. No. 109 at ¶¶ 26, 27; Doc. No. 108-1at 29:8-29:21; Doc. No. 108-2 at ¶ 11). Plaintiff testified that her bites cleared up after her transfer. (Doc. No. 109 at ¶ 28; Doc. No. 108-1 at

24:25-25:8; 26:10-27:12). According to Plaintiff, her symptoms flared when she handled old property and her prayer rug, and subsided when she did not. (Doc. No. 109 at ¶ 29; Doc. No. 108-1 at 24:25-25:18).

Plaintiff has not contested any of these facts.

**B. Analysis**

Plaintiff's claims against Defendant Faust can be viewed as deliberate indifference to serious medical needs claims, corrective inaction claims, and conditions of confinement claims.

As mentioned above, the Medical Defendants have filed a Motion for Summary Judgment and the Court has recommended the Motion be granted—Plaintiff has not identified a genuine issue of material fact calling into question whether the Medical Defendants were deliberately indifferent to her serious medical needs. (Doc. No. 113). Even if the Court had determined a violation occurred, Plaintiff acknowledges that Defendant Faust was relying on medical staff's expertise in reviewing Plaintiff's complaints of bed bugs and bed bug bites. (Doc. No. 108 at 19:8-19:11). Defendant Faust's deference to medical staff's treatment of Plaintiff was justified. Smith v. Lisenbe, 73 F.4th 596, 600 (8th Cir. 2023) (prison official may rely on reasonable opinion of medical professional). Under these circumstances, no reasonable jury could conclude that Defendant Faust was deliberately indifferent to Plaintiff's serious medical needs.

Plaintiff alleged that Defendant Faust allowed the Medical Defendants' mistreatment of Plaintiff to continue unabated. (Doc. No. 2 at 4-5). The Court has found there was no underlying deliberate indifference to serious medical needs. (Doc. No. 113). As such, Plaintiff's claim against Defendant Faust as a supervisor fails as a matter of law. Partridge v. City of Benton, Arkansas, 157 F.4th 970, 974 (8th Cir. 2025), cert. denied sub nom. Partridge v.

Benton, Arkansas, 224 L. Ed. 2d 502 (Apr. 20, 2026) (Without a violation . . . there is no basis for imposing . . . supervisory liability).

"[F]or a conditions-of-confinement claim, '[t]he Eighth Amendment standard . . . is whether the defendant[] acted with deliberate indifference.'" Stewart v. Precythe, 91 F.4th 944, 949 (8th Cir. 2024). The defendant's required state of mind is akin to criminal recklessness. Id. That is, the defendant must know of a substantial risk of harm to an inmate but fail to respond to the risk. Id. "This standard incorporates 'due regard for prison officials' unenviable task of keeping [inmates] in safe custody under humane conditions.'" Id.

After Plaintiff first complained about bed bugs, Defendant Faust responded to Plaintiff's grievance informing Plaintiff that Captain Watson had issued Plaintiff a different mat and that medical would need to investigate whether Plaintiff's condition was related to bedbugs. Ultimately, after inspecting Plaintiff's mattress and property—on more than one occasion—medical staff found no evidence of bed bugs. Defendant Faust met personally with Plaintiff, with others present, to hear the history of Plaintiff's complaints and have Plaintiff's photographs reviewed. Plaintiff was later given additional replacement bedding. And Defendant Faust referred Plaintiff for additional services.

All of this considered, Defendant Faust was not deliberately indifferent to the alleged unlawful conditions of Plaintiff's confinement. When faced with the possibility that Plaintiff was suffering from bed bug bites or a bed bug infestation, Defendant Faust sought answers and provided solutions. No reasonable jury could conclude under these circumstances and Defendant Faust violated Plaintiff rights.

Plaintiff did not meet proof with proof to establish facts in dispute that would preclude summary judgment in Defendants Faust's favor. Wilson v. Miller, 821 F.3d 963, 970 (8th Cir.

2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor). Accordingly, the Court recommends that Defendant Faust's Motion for Summary Judgment be granted and Plaintiff's claims against her be dismissed with prejudice.

If United States District Judge D.P. Marshall Jr. adopts the Court's pending Recommendation (Doc. No. 113) along with the instant Proposed Findings and Recommendations, there will be no remaining claims in this case. Accordingly, the Court will recommend that this action be closed.

**V. Conclusion**

IT IS, THEREFORE, RECOMMENDED that:

1. Defendant Faust's Motion for Summary Judgment (Doc. No. 108) be GRANTED;
2. Plaintiff's claims against Defendant Faust be DISMISSED with prejudice; and
3. This action be CLOSED.

Dated this 30th day of July, 2026.

JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE